**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Forman Motorworks, LLC, | No. CV-23-02554-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| SEMA Logistics, Inc., | |
| Defendant. | |

Plaintiff Forman Motorworks, LLC ("Forman Motorworks") filed suit against Defendant SEMA Logistics, Inc. ("SEMA") for damage of a motor vehicle carried from Woodstock, Illinois to Phoenix, Arizona pursuant to the Carmack Amendment. Both parties have moved for summary judgment (Docs 34; 36). For the reasons that follow, Forman Motorworks' motion will be granted, and SEMA's motion will be denied.

**FACTUAL BACKGROUND**

The following facts are not the subject of reasonable dispute unless otherwise noted. Forman Motorworks and SEMA filed separate statements of fact in support of their positions, (Doc. 35, "PSOF"; Doc. 37, "DSOF"), controverting statements of fact. (Doc. 48, "PCSOF"; Doc. 45, "DCSOF"), and Forman Motorworks filed objections to SEMA's controverting statements of fact. (Doc. 48; "POCSOF"). The Court has reviewed the objections and only considered admissible relevant evidence offered by each party. "In fulfilling its duty to review each cross-motion separately, the Court must review the evidence submitted in support of each cross-motion." *Fair Housing Council of Riverside*

*County v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

Plaintiff Forman Motorworks is an entity registered and incorporated in the state of Arizona and a licensed motor vehicle dealer. Defendant SEMA is an Illinois Corporation and a registered and licensed federal motor carrier.

On August 4, 2023, Forman Motorworks purchased a used black 2023 Porsche 911 COUPE 2-DR, vin no. WP0AF2A90PS278293 ("2023 Porsche"), from Bull Valley Ford, Inc. located at 1460 S. Eastwood Dr. Woodstock, IL 60098 for $450,000. The 2023 Porsche was previously purchased on May 31, 2023 for approximately the Manufacturer's Suggested Retail Price ("MSRP") of $290,000. The 2023 Porsche's previous owner, Jack Foss, testified the sale of the 2023 Porsche was negotiated through Bull Valley Ford to preserve tax credits and to allow a wholesale transaction to Forman Motorworks. Mr. Foss states the 2023 Porsche was never at Bull Valley Ford for any purpose related to the vehicle's sale and was not picked up or transported by a trucking company from Bull Valley Ford to his residence at any time.

At purchase, the 2023 Porsche's odometer had a reading of 2711 miles. The written sales contract contained an "as is" provision stating:

> The information you see on the buyer's guide window form for this vehicle overrides any contrary provisions in the contract for sale. This used motor vehicle is sold (as is) without any warranty either expressed or implied. The purchaser will bear the entire expense of repairing or correcting any defects that presently exist or that may occur in the future.

Forman Motorworks, who offers car transportation services to the public, coordinated the shipping of the 2023 Porsche, including selecting and assigning SEMA, a company with whom it had previously worked, for transport. On August 4, 2023, after acquiring the 2023 Porsche, Forman Motorworks engaged SEMA on DealerTrack CentralDispatch[1] seeking to hire SEMA to transport the 2023 Porsche to Phoenix. Based

---

[1] As part of its argument that Forman Motorworks acted as a freight forwarder or broker in this transaction, SEMA describes DealerTrack Central Dispatch as a property broker. Forman Motorworks disputes this definition, stating "DealerTrack Central Dispatch is not a property broker as originally alleged but is an online dispatch or load board used by dealerships and carriers. Dealerships will post a load that they need transported and can

- 2 -

on two dispatch sheets from DealerTrack CentralDispatch, SEMA states Forman Motorworks first sought to hire SEMA to transport the 2023 Porsche from Bull Valley Ford to Forman Motorworks's location in Phoenix before amending the dispatch to instead deliver the 2023 Porsche from Mr. Foss's residence in Woodstock, Illinois.[2] SEMA accepted the amended dispatch request to transport the vehicle from Mr. Foss's residence to Forman Motorworks in Phoenix.

SEMA states the dispatch sheets are neither bills of lading[3], receipts, nor original transportation contracts for the 2023 Porsche. Forman Motorworks argues the dispatch sheets are transportation contracts based on terms reading:

> CONTRACT TERMS
> . . .
> Breach of this contract will result in negative rating
> ADDITIONAL TERMS
> . . .
> Authority to transport this vehicle is hereby assigned to Sema Logistics, Inc. By accepting this agreement Sema Logistics, Inc certifies that it has the proper legal authority and insurance to carry the above described vehicle, only on trucks owned by Sema Logistics, Inc . . . The agreement between Sema Logistics, Inc and Forman Motorworks LLC, as described in this dispatch sheet, is solely between Sema Logistics, Inc and Forman Motorworks LLC.

Both dispatch sheets additionally identify SEMA as a carrier, and Forman Motorworks as the party requesting the dispatch, and the party to whom the 2023 Porsche was required to be delivered.

On August 7, 2023, a truck and trailer operated by SEMA arrived at Mr. Foss's

---

assign a carrier to the load. The carrier then responds and accepts the loan on their end."

[2] Forman Motorworks argues based on owner and disclosed expert Franz Forman's deposition and Mr. Foss's affidavit only one dispatch sheet was issued for this shipment. However, SEMA has provided both dispatch sheets and objects to Mr. Foss's declaration as inappropriate supplementation to a written contract. Forman Motorworks has provided no other objection to the admissibility of the first dispatch sheet, so the Court finds it admissible.

[3] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. James N. Kirby Pty. Ltd.*, 543 U.S. 14, 19 (2004) (internal citations omitted).

residence at approximately 1:00 pm and loaded the 2023 Porsche into the trailer. Upon loading the 2023 Porsche, Mr. Foss states the 2023 Porsche was "in perfect showroom condition, [] had no damage interior smells, or other concerns," and that Mr. Foss never allowed any persons to smoke in the 2023 Porsche.[4] Mr. Foss also states he requested a bill of lading from SEMA's driver when the 2023 Porsche was picked up, but did not receive one and was informed documentation would be provided to Forman Motorworks who requested the shipment.[5]

On August 10, 2023, during transport, SEMA's truck caught fire about 20 miles outside of Phoenix. The parties dispute the amount of damage the 2023 Porsche suffered from this fire. SEMA states the 2023 Porsche "was neither crushed, physically damaged, nor burnt in the fire" and "the only temporary damage to the 2023 Porsche was the deposit of ashes on the outside of the car and an alleged smoke odor in the inside." Franz Forman, the owner of Forman Motorworks and a disclosed expert in this case, would testify "the 2023 Porsche was not only subject to the smoke that swirled around in the vehicle from the fire, but the fire department sprayed water into the interior of the vehicle while extinguishing the fire." Mr. Forman also would testify the 2023 Porsche had a chemical odor and did not smell like cigarette smoke. SEMA argues Mr. Forman lacked first-hand knowledge as to what occurred during the fire and was not accepted as a qualified expert on the subject matter of these statements.

On August 30, 2023, Forman Motorworks submitted a timely freight claim to SEMA seeking $154,972.53 for a full replacement of the interior of the 2023 Porsche. In a letter sent by Forman Motorworks during the freight claim loss process, Forman Motorworks's counsel identified Mr. Foss as the seller and shipper. After an investigation,

---

[4] SEMA objects to Jack Foss's characterization of the 2023 Porsche because he was not disclosed as an expert, is not qualified to testify to the subject matter, and for lack of foundation and speculation given Mr. Foss has not established he was the only person to use the car. The Court finds Mr. Foss's statements were rationally based on his perception and within the scope of FRE 701.

[5] SEMA disputes this statement insofar as it is intended to assert SEMA had an obligation to issue a bill of lading but failed or refused to do so.

- 4 -

on November 21, 2023, SEMA denied Forman Motorworks's freight claim.[6]

Forman Motorworks incurred costs of $14,371.56 to recondition the 2023 Porsche. The 2023 Porsche's paint protective film was removed and replaced due to the discoloration of the soot and smell from the fire at a cost of $10,000.00. And the entirety of the interior of the 2023 Porsche was removed, dried out, cleaned, and covered in a baking soda substance to remove the smell. Mr. Forman would testify Forman Motorworks did everything it could to remove the smell from the vehicle, but could not meet the standard of "retail perfect" wanted by its clients.[7]

Mr. Forman testifies Forman Motorworks made efforts to sell the 2023 Porsche, but buyers lost interest when informed of the smoke history and fire. Rather than replacing the interior and making all possible efforts to remove the smell, Forman Motorworks elected to sell the 2023 Porsche wholesale at a loss and without putting its name on a retail transaction. On or about March 4, 2024, Forman Motorworks negotiated and sold the 2023 Porsche to a wholesale company, Givemethevin, LLC for $400,000.00. Givemethevin LLC is one of the largest wholesale purchasers nationwide and only a handful of purchasers would acquire the 2023 Porsche at that value.

On December 9, 2023, Forman Motorworks filed this action under the Carmack Amendment to the Interstate Commerce Act to recover $154,972.53 for repairs and recondition of the vehicle and $75,000.00 for the diminution in value of the 2023 Porsche for a total actual loss of $229,972.53. In its final disclosure statement, Plaintiff amended the amount claimed for repairs and reconditioning to $14,371.56, the amount of diminution and loss of value in a range from $100,000.00 to $125,000.00, and requests at least $114,371.56 in this motion.

---

[6] SEMA also states it made a settlement offer, but has not established why it can be considered under FRE 408.

[7] SEMA disputes this fact on grounds of foundation, speculation, because Mr. Forman was never disclosed as an expert on the subject matter, and because Forman Motorworks hired Jax Wax, a car wax and detailing company, but never hired or used a smoke remediation provider. The Court finds Mr. Forman's statements were rationally based on his perception and within the scope of FRE 701.

On January 17, 2025, Forman Motorworks filed a motion for summary judgment arguing SEMA is strictly liable for damage to the 2023 Porsche under the Carmack Amendment. On that same day, SEMA filed a cross-motion for summary judgment arguing Forman Motorworks cannot sue under the Carmack Amendment and that its damages are not recoverable.

## LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id.*

At summary judgment, the Court considers only admissible evidence. See Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

## ANALYSIS

### A. Standing

As an initial matter, the parties dispute whether Forman Motorworks has standing to bring a claim against SEMA under the Carmack. SEMA contends Forman Motorworks cannot bring suit under the Carmack Amendment because neither Forman Motorworks nor SEMA are parties allowed under the statute.

"The Carmack Amendment is a federal statute that provides the exclusive cause of action for interstate shipping contract claims, and it completely preempts state law claims alleging delay, loss, failure to deliver and damage to property." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687–88 (9th Cir. 2007). The purpose of the Carmack Amendment was largely to provide "a uniform national liability policy for interstate carriers." *Id.* (citing *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 613 (9th Cir. 1992)).

The original text of the 1906 Carmack Amendment provided that carriers were "liable to the lawful holder" of the "receipt or bill of lading." 34 Stat. 584, 595 (1906).[8] In 1978, Congress revised the Interstate Commerce Act replacing the phrase "lawful holder of the receipt or bill of lading" with the phrase "person entitled to recover under the receipt or bill of lading." 92 Stat. 1337, 1453.

While some courts have interpreted a broad class of persons are entitled to recover under the revised Carmack Amendment, the Ninth Circuit has stated "the statue compels a more direct approach to standing. The crucial phrase under the current statute is 'the person entitled to recover under the receipt or bill of lading.'" *OneBeacon Ins. Co. v. Haas Industries, Inc.*, 634 F.3d 1092, 1098 (quoting 49 U.S.C. § 14706(a)(1)). Nevertheless, the statute reads "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C. § 14706(a)(1). And a Ninth Circuit court has held standing exists even if a bill of lading is not issued. *See Starr Indem. & Liab. Co. v. Expeditors Int'l of Wash., Inc.*, 2024 U.S. Dist. LEXIS 17195 at *10 (W.D.W.A. 2024) ("Carmack applies only to transport of property for which Carmack *requires* a receiving carrier to issue a bill of lading, regardless of whether that carrier *erroneously fail[ed] to issue such a bill.*") (emphasis in original) (citations omitted).

Next the issue turns on who is "the person entitled to recover under the receipt or bill of lading" without a receipt or official bill of lading. SEMA contends Forman

---

[8] Typically, a receipt serves the purpose of acknowledging goods are received for transportation and limiting a carrier's liability under specific contingencies, whereas a bill of lading serves as both a receipt and a contract by the carrier to deliver goods for transportation. *See United States v. Wells Fargo & Co.,* 271 F. 180, 182-183 (2d Cir. 1921).

Motorworks is unable to show that either it or SEMA are applicable parties to the Carmack Amendment because Forman Motorworks is neither (1) the shipper, (2) a consignor[9], or (3) a holder of bill of lading or otherwise entitled to recover under the bill of lading. SEMA concedes Forman Motorworks might be a "consignee" defined as "a person named in a bill of lading as the person to whom the goods are to be delivered" and agrees Forman Motorworks owned the 2023 Porsche at the time of shipping. 49 U.S.C. §80101(1)

"Cases interpreting the Act have confined the right to sue to shippers or consignors[,] holders of the bill of landing [sic] issued by the carrier or persons beneficially interested in the shipment although not in possession of the actual bill of lading, buyers or consignees, or assignees thereof." *Harrah v. Minnesota Mining & Mfg. Co.*, 809 F. Supp. 313, 318 (D.N.J. 1992) (internal citations omitted). In *Shamoun v. Old Dominion Freight Line, Inc.*, U.S. Dist. LEXIS 18656 (N.D. Tex. 2020), the court held an owner of goods would have standing to bring a claim under the Carmack Amendment even if the bill of lading did not identify the plaintiff as a consignee or if no bill of lading had been issued at all. SEMA contends these cases are inapposite based on the Ninth Circuit's interpretation in *OneBeacon* that "the statute compels a more direct approach to standing." *OneBeacon Ins. Co.* 634 F.3d at 1092.

Considering all applicable case law along with the admissible facts, the Court finds Forman Motorworks is entitled to bring a claim under the Carmack Amendment as the owner of goods and the party to whom the 2023 Porsche was to be delivered. The only admissible documents issued for this shipment, the dispatch sheets, identify SEMA as a carrier, Forman Motorworks as the party requesting the dispatch, and the party to whom the 2023 Porsche is to be delivered. While SEMA argues the dispatch sheets cannot be considered a bill of lading, receipt, or contract, the dispatch sheets establish a contract between the parties stating, "*[t]he agreement* between Sema Logistics, Inc and Forman Motorworks LLC, as described in this dispatch sheet, is solely between Sema Logistics, Inc and Forman Motorworks LLC" and "breach of *this contract* will result in

---

[9] Under 49 U.S.C. § 80101(2), a "consignor" means the person named in a bill of lading from whom the goods have been received for shipment.

- 8 -

negative rating." (emphasis added). If a bill of lading or receipt were issued in this case, Forman Motorworks would be a "person entitled to recover under the receipt or bill of lading."

SEMA cites no binding or even persuasive authority that an owner of goods and potential consignee should be barred from a claim altogether merely because a bill of lading was not issued. While *OneBeacon* states the Ninth Circuit takes a more categorical approach to standing than other circuits under the Carmack Amendment, it was not a situation where the carrier failed to issue a bill of lading and does not hold interested parties are barred from claims when no bill of lading is issued. Given the Carmack Amendment's preclusion of state claims, a holding that the mere lack of a bill of lading or receipt could insulate a carrier from all liability, would allow a shipper to limit liability from interested parties simply by failing to issue of bill of lading or receipt.

SEMA raises two additional arguments regarding standing. Because Forman Motorworks arranged and coordinated transportation, selected SEMA based on prior dealings, and offers transportation services to clients in other transactions, SEMA also argues Forman Motorworks served as an unlicensed freight forwarder or broker in this transaction who cannot assert claims under the Carmack Amendment. Under the Carmack Amendment, a "freight forwarder" is defined as,

> [A] person holding itself out of the general public . . . to provide transportation of property for compensation and in the ordinary course of its business—
> (A) assembles and consolidates . . . shipments . . .
> (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> (C) uses any part of the transportation a carrier subject to jurisdiction under this subtitle. [49 USCS §§ 10101 et seq.].

49 U.S.C. § 13102(8). And a "broker" is defined as:

> [A] person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal, or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2).

Under the statutes, both brokers and freight forwarders must hold themselves out to the public for providing transportation for compensation. Though Forman Motorworks provides car transportation services to the public, SEMA has provided no admissible evidence that Forman Motorworks sought to transport the 2023 Porsche for compensation in this case. Thus, Forman Motorworks cannot be considered a freight forwarder or broker in transporting the 2023 Porsche.

Lastly, SEMA contends it is not an applicable defendant under the Carmack Amendment because it was not a "receiving carrier" if another carrier delivered the 2023 Porsche from Bull Valley Ford to the residence of Jack Foss.

Again, SEMA's arguments are unavailing. SEMA has provided no evidence to show the car was transported from Bull Valley Ford to the residence of Jack Foss other than the fact that the car was purchased from the Bull Valley Ford, and a previous dispatch order requested shipment from Bull Valley Ford to Forman Motorworks. Moreover, the Carmack Amendment provides for both receiving and delivering carriers are liable for actual loss or injury to property. 49 U.S.C. § 14706.  The Court thus finds Forman Motorworks has standing to bring a claim against SEMA under the Carmack Amendment.

**B. Liability**

To state a claim under a Carmack Amendment, a plaintiff must demonstrate three elements: (1) The cargo was received by the carrier in good condition, (2) the cargo was damaged lost with in the carrier's possession or delivered in damaged condition and (3) the damages or actual loss and injury to the cargo. *ASARCO v. England Logistics*, 71 F.Supp.3d 990, 994 (D. Ariz. 2014) (citing *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137-138 (1964)). After a plaintiff makes this showing, the burden is on the carrier to show the damage was caused by the shipper himself or the inherent vice or nature of the goods. *Thousand Springs Trout Farms, Inc. v. IML Freight, Inc*., 558 F.2d 539, 542 (9th Cir. 1977).

Mr. Foss would testify that SEMA received the 2023 Porsche in good condition. SEMA contests whether Mr. Foss was qualified to make these statements and the condition of the 2023 Porsche based on the 2711 miles on the 2023 Porsche's odometer and the "as

is" provision in the sales contract. The Court finds Mr. Foss's statements were rationally based on his perception, within the scope of FRE 701, and SEMA has not provided any evidence the 2023 Porsche was received defective in any way. It is also uncontested that the 2023 Porsche was damaged while in SEMA's possession as a result of the truck and trailer fire. Forman Motorworks can recover from SEMA under the Carmack Amendment and turns to the question of damages.

### C. Damages

Forman Motorworks seeks $14,371.56 in repairs and reconditioning and at least $100,000.00 of lost value for the sale of the 2023 Porsche for a total of $114,371.56 in this motion. SEMA does not dispute Forman Motorworks is entitled to seek $14,371.56 for repairs, but disputes whether Forman Motorworks is entitled to recover $100,000.00 for lost value arguing Forman Motorworks cannot establish the value of the car at purchase on August 4, 2023 nor when it was received in allegedly damaged condition on August 11, 2023, and has not provided competent or admissible evidence to support a claim for consequential or special damages.

The Carmack Amendment establishes a covered carrier is liable for damages it causes to property it transports in the amount of the "actual loss or injury to the property." 49 U.S.C. § 11707(a)(1). The ordinary measure of damages in Carmack Amendment cases is the difference between the market value of the goods in the condition in which they should have arrived at their destination and their market value in the condition in which they actually arrived. *Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 764 (9th Cir. 1981) (citing *Gulf, Colorado & Santa Fe Railway v. Texas Packing Co.,* 244 U.S. 31, 37 (1917); *F.J. McCarty Co. v. Southern Pacific Co.*, 428 F.2d 690, 692 (9th Cir. 1970)). To recover special damages, those which the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made, the plaintiff must show the carrier had notice of the special circumstances from which such damages would flow. *Id.* at 765 (internal citations omitted).

Forman Motorworks has procured two experts for damages: Jared Lowell and Franz Forman. Mr. Lowell based his opinion on 23 years of experience buying, selling, and

valuing high-end cars at dealerships and states the 2023 Porsche is the type of car he has dealt with in stores for his entire career. Mr. Lowell would testify the 2023 Porsche was selling into the $500,000 to $540,000 range in September of 2023 and may have been sold for MSRP or as high as $600,000 to $700,000 by the original dealer because cars like the 2023 Porsche are generally sold to Porsche VIP clientele. Mr. Lowell adds that timing is a crucial part of the luxury car market, as valuations will decrease after a limited car release as additional supply is released to meet demand.

Additionally, Mr. Lowell would testify high-end dealers try to avoid having vehicles in their inventory with any smell because smoke smell can affect the value or marketability of the car. Mr. Lowell claims removing a smoke smell can require professional cleaning by a detail shop, can in severe cases require replacing parts like carpets and seats, and can be costly and time intensive. Mr. Lowell opines "there was a time element of trying to sort smoke out and the value of the car changed in that time."

SEMA objects to Mr. Lowell's testimony because Mr. Lowell never inspected the 2023 Porsche, does not have first-hand knowledge of how the 2023 Porsche smelled, nor was presented with any data or evidence from which to form opinions about the severity of the smell.

The second expert, Mr. Forman, based his opinion on over 20 years in the luxury car industry and the sale of nearly 2000 luxury or premium vehicles totaling an excess of $150 million in value. Mr. Forman would testify at the time of purchasing the 2023 Porsche, there were no more than six versions of the 2023 Porsche on the market and the undamaged 2023 Porsche's market value based on his research was between $500,000 to $525,000 if it was delivered undamaged on August 12, 2023. After purchasing the 2023 Porsche, Mr. Forman claims the price decreased as more vehicles became available on the market. Thus, Mr. Forman had a limited time to sell the 2023 Porsche to recoup a portion of its $450,000 purchase price.

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than

- 12 -

not that:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods, and

    (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"An expert's specialized knowledge and experience can serve as the requisite 'facts or data' on which they render an opinion." *Elosu v. Middlefork Ranch, Inc*. 26 F.4th 1017, 1024 (9th Cir. 2022) (citation omitted). "[E]xpert opinion is admissible and may defeat summary judgment if it appears that the affiant is competent to give an expert opinion and that the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995) (internal citation omitted). However, "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Id*. at 1436. Additionally, the advisory notes of Rule 701 note "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Fed. R. Evid., Advisory Committee Notes, 2000 Amendments; *see also* Dean v. Corr. Corp. of Am., 108 F. Supp. 3d 702, 714 (D. Ariz. 2014) (finding the owner of food service company was not required to qualify as expert to offer opinion testimony as to how a specialized diet would add costs to his business).

Given both witnesses have over 20 years of experience in valuing cars, the Court finds Mr. Lowell and Mr. Forman are qualified to testify on car valuation and the luxury auto market. Mr. Forman, as the owner of Forman Motorworks, is also entitled to testify under Rule 701 about the projected profits of his business. SEMA contests whether either expert's valuations of the 2023 Porsche are a product of reliable principles or methods

because "[n]either provides the methodology used to determine how many similar cars were available on the market, what used car [sic] in similar condition and milage sold for, or how smoke damage is a permanent damage." Yet SEMA has provided no reason why the Court should disregard these qualified experts' testimony on the 2023 Porsche's market value and other aspects of the luxury auto market. SEMA has provided no reason why these experts cannot rely upon their specialized knowledge and experience to value the 2023 Porsche, nor have they offered any alternative expert or valuation of the 2023 Porsche at the times relevant to this case. Accordingly, the Court finds the testimony of Mr. Lowell and Mr. Forman is admissible, reliable, and accepted by the Court.

SEMA also contends Forman Motorworks's claimed damages for the market loss of the 2023 Porsche are consequential or overly speculative and thus strictly limited under the Carmack Amendment. They are not. Consequential damages are "losses that do not flow directly and immediately from that act." *Consequential Damages*, Black's Law Dictionary (11th ed. 2019). The alleged damages regarding the decrease of the value of the 2023 Porsche are a direct consequence of the fire and were reasonably foreseeable when SEMA contracted to deliver the vehicle.

Forman Motorworks paid a total of $450,000 for the 2023 Porsche, spent $14,371.56 to deal with smoke damage, and sold the vehicle for $400,000 wholesale. Mr. Forman and Mr. Lowell have both estimated the 2023 Porsche was worth at least $500,000 undamaged. Thus, the Court finds Forman Motorworks is entitled to recover from SEMA in the amount of $100,000 for the diminution of the value in the 2023 Porsche and $14,371.56 for repairing the smoke damage for a total of $114,371.56.

**IT IS ORDERED** Forman Motorworks's, LLC Motion for Summary Judgment (Doc. 34) is **GRANTED.** The Clerk of Court is directed to enter a judgment in favor of Forman Motorworks in the amount of $114,371.56.

…

…

…

**IT IS FURTHER ORDERED** SEMA Logistics, Inc.'s Motion for Summary Judgment (Doc. 36) is **DENIED.**

Dated this 8th day of August, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge